JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLE VIEIRA, *et al.*, | Case No. 2:18-cv-06502-AB (PLAx) |
| Plaintiffs, | **ORDER GRANTING PLAINTIFFS' MOTION TO REMAND** |
| v. | |
| MENTOR WORLDWIDE, LLC, *et al.*, | |
| Defendants. | |

Pending before the Court is the motion to remand filed by Plaintiffs Nicole Vieira ("Vieira") and Emilia Barozzi ("Barozzi") (collectively, "Plaintiffs"). Dkt. No. 27. Defendant Mentor Worldwide, LLC ("Mentor") opposed the motion, and Plaintiffs filed a reply. Dkt. Nos. 33, 37. The Court finds this matter appropriate for decision without oral argument and vacates the hearing scheduled for September 14, 2018. *See* Fed. R. Civ. P. 78; LR 7-15. For the following reasons, the Court **GRANTS** Plaintiffs' motion.

**I.    BACKGROUND**

This case is a product liability action arising from injuries allegedly caused by breast implants. According to Plaintiffs' complaint ("Complaint"), Mentor manufactured MemoryGel Silicone Implants. Dkt. No. 1, Ex. A ¶ 4. NuSil, LLC ("NuSil") and NuSil Technology, LLC ("NuSil Technology") allegedly manufactured,

1.

produced, and supplied the silicone Mentor used in those implants. Compl. ¶ 9. Plaintiffs both were implanted with Mentor's MemoryGel Silicone Implants. Compl. ¶¶ 19, 26. After receiving the implants, Plaintiffs experienced various medical complications, including fatigue, weakness, memory loss, and nausea. Compl. ¶¶ 20, 27. Eventually, Plaintiffs underwent "explantation" procedures, during which they discovered that the implants' silicone gel had bled. Compl. ¶¶ 23, 29. According to the Complaint, mistakes in Mentor's manufacturing of the implants and defects in the silicone used in the implants caused the silicone gel bleeds. Compl. ¶¶ 30, 31, 33, 102, 106, 138. Plaintiffs claim the gel bleeds in turn triggered the medical complications they experienced. Compl. ¶¶ 34.

Plaintiffs filed their Complaint in Los Angeles County Superior Court on June 27, 2018. The Complaint asserts three causes of action against Mentor, NuSil, and NuSil Technology (collectively, "Defendants"): (1) negligence/negligence per se, (2) strict product liability—failure to warn, and (3) strict product liability—manufacturing defect.

Mentor removed the case to this Court on July 27, 2018 with the consent of NuSil and Nusil Technology. Notice of Removal (Dkt. No. 1). According to Mentor, the Court has jurisdiction over this case because complete diversity exists and Plaintiffs' claims arise under federal law. *Id*. Plaintiffs now move to remand the case back to Los Angeles County Superior Court.

**II.    LEGAL STANDARD**

Under 28 U.S.C. § 1441(a) ("Section 1441"), a civil action may be removed to the district court where the action is pending if the district court has original jurisdiction over the action. The basic federal jurisdiction statutes, 28 U.S.C. § 1332 and 28 U.S.C. § 1331, confer "diversity" and "federal question" jurisdiction, respectively.

A federal district court has diversity jurisdiction over a dispute between "citizens of different States" that places more than $75,000 in controversy, exclusive

of interest and costs. 28 U.S.C. § 1332(a). Section 1332(a)(1) requires complete diversity such that "the citizenship of each plaintiff is diverse from the citizenship of each defendant." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). Section 1441(b)(2) further limits removal to cases in which no defendant "properly joined and served . . . is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2).

A federal district court has federal question jurisdiction over "civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Courts look to the well-pleaded allegations of the complaint, not any defenses, in assessing whether an action arises under federal law. *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986). Generally, a case arises under federal law "when federal law creates the cause of action asserted." *Gunn v. Minton*, 568 U.S. 251, 257 (2013). However, federal question jurisdiction can also apply where a "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).

### III. DISCUSSION

Mentor argues that the Court has subject matter jurisdiction for two reasons. First, it claims the Court possesses diversity jurisdiction because complete diversity exists among the properly-joined parties. Second, it contends that the Court has federal question jurisdiction because Plaintiffs' claims arise under federal law.

**A. Diversity Jurisdiction—Fraudulent Joinder**

The parties do not dispute that this case places more than $75,000 in controversy. Vieira and Barozzi are citizens of California and Colorado, respectively. Notice of Removal ¶¶ 8, 9. Mentor is a citizen of New Jersey, and NuSil Technology is a citizen of Delaware and Pennsylvania. Notice of Removal ¶¶ 10, 11. Thus, absent Plaintiffs' claims against NuSil, 28 U.S.C. § 1332(a)'s complete diversity and

3.

amount in controversy requirements are satisfied.

NuSil, however, is a citizen of California. Notice of Removal ¶ 12. It therefore shares citizenship with Vieira and destroys complete diversity. NuSil's joinder as a defendant also renders removal improper under 28 U.S.C. § 1441(b)(2). The Court therefore cannot maintain diversity jurisdiction as long as NuSil is a properly-joined defendant in this case. Mentor claims that the Court nevertheless possesses diversity jurisdiction because NuSil is a sham defendant that should be ignored for purposes of assessing diversity jurisdiction.

A non-diverse party may be disregarded for purposes of determining whether jurisdiction exists if the court determines that the party's joinder was "fraudulent" or a "sham." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998). Fraudulent joinder only occurs when there is "no possibility that the plaintiff could demonstrate a viable claim against the allegedly fraudulently joined defendant." *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 549 (9th Cir. 2018). In this regard, "[r]emand must be granted unless the defendant shows that the plaintiff would not be afforded leave to amend his complaint to cure [a] purported deficiency" in its allegations against the non-diverse defendant. *Padilla v. AT & T Corp.*, 697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009) (quotations omitted); *see also Grancare*, 889 F.3d at 550 ("[T]he district court must consider . . . whether a deficiency in the complaint can possibly be cured by granting the plaintiff leave to amend."). A removing defendant may present evidence to prove fraudulent joinder, but the district court must resolve all disputed questions of fact in the plaintiff's favor. *See Grancare*, 889 F.3d at 549; *Gonzalez v. Metro. Life Ins. Co.*, No. CV 15-2870-R, 2015 WL 4133512 at *2 (C.D. Cal. July 7, 2015) ("[A] non-diverse defendant is deemed a sham defendant if, after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the party whose joinder is questioned."). "Fraudulent joinder must be proven by clear and convincing evidence." *Hamilton Materials, Inc. v. Dow*

*Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007).

       The allegations in the Complaint establish possible product liability claims against NuSil. According to the Complaint, NuSil and NuSil Technology collectively manufactured and designed the silicone Mentor used in its implants. Compl. ¶ 102. Plaintiffs allege that the silicone NuSil and NuSil Technology provided Mentor included undisclosed chemicals that affected the implants' silicone elastomer shells. Compl. ¶ 106. A post-explantation examination of Barozzi's implants allegedly revealed defects in the implants' shells. Compl. ¶¶ 30, 31. These allegations, taken as true, establish that NuSil played a critical role in manufacturing a part of the implants that ultimately failed. As Mentor points out, a plaintiff in a product liability action must establish "that the defendant produced, manufactured, sold, or was in some way responsible for the [defective] product." *Garcia v. Joseph Vince Co.*, 84 Cal. App. 3d 868, 874 (1978) (quotations omitted). Because Plaintiffs aver that NuSil manufactured a defective component of Mentor's implants, their allegations do just that.[1] Thus, on the face of the Complaint, Plaintiffs appear to have properly joined NuSil as a defendant in this product liability action.

       Mentor argues that the Court should ignore these allegations because the evidence establishes that NuSil is simply a holding company with no operations. Given that NuSil is only a holding company, Mentor claims, it could not have participated in the manufacture of Mentor's allegedly defective implants. In support of this argument, Mentor submitted a declaration from Scott Mraz, one of NuSil's individual members. Notice of Removal, Ex. C. According to Mr. Mraz, NuSil "has

---

[1] Mentor argues that "undifferentiated pleading is unacceptable," and that the Court should reject Plaintiffs' collective allegations against NuSil and NuSil Technology. Opp'n at p. 17. Mentor fails to identify any general rule against collective allegations. And while lumping allegations against a non-diverse defendant together with those against diverse defendants may suggest fraudulent joinder in some circumstances, it does not here, where the Complaint details NuSil and NuSil Technology's involvement in manufacturing the silicone in Mentor's implants. *See* Compl. ¶¶ 102–106.

not developed, designed, manufactured, supplied, or distributed any products, including the silicone or silicone gel[] used to manufacture breast implants." Mraz Decl. ¶ 14. Mentor relies entirely on this portion of Mr. Mraz's declaration to show that NuSil could not have participated in the manufacture of the silicone in Plaintiffs' allegedly defective implants.

While Mr. Mraz's declaration normally might cast doubt on Plaintiffs' ability to recover from NuSil, Plaintiffs have submitted evidence that directly contradicts it. Plaintiffs request judicial notice of the Statement of Information NuSil filed with the California Secretary of State on May 24, 2013 (the "2013 Statement of Information").[2] Request for Judicial Notice, Ex. A (Dkt. No. 38-1). The 2013 Statement of Information describes NuSil's "Type of Business" as "Manufacture of Silicone Products." Mr. Mraz signed the 2013 Statement of Information on NuSil's behalf, warranting that "THE INFORMATION CONTAINED HEREIN, INCLUDING ANY ATTACHMENTS, IS TRUE AND CORRECT." *Id*. The 2013 Statement of Information therefore indicates that NuSil manufactured silicone products. This directly contradicts Mr. Mraz's present statement that NuSil "has not . . . manufactured . . . any products." Mraz Decl. ¶ 14. Given that the Court resolves fact disputes in the Plaintiff's favor at this juncture, it must conclude that NuSil did, in fact, manufacture silicone products.

Mentor concedes that the Court may take judicial notice of the 2013 Statement of Information, but it argues that the Court cannot use it for the truth of the matters asserted therein. However, the 2013 Statement of Information was filed by NuSil, which, despite Mentor's protestations, is a party defendant in this case. The 2013

---

[2] The Court **GRANTS** Plaintiffs' request for judicial notice. Dkt. No. 38. The 2013 Statement of Information is a proper subject of judicial notice under Federal Rule of Evidence 201. A court may take judicial notice of matters of public record, and a California Statement of Information is a matter of public record. *Khoury Invs. Inc. v. Nationwide Mut. Ins. Co.*, No. CV 13-05415-MWF (Ex), 2013 WL 12140449, at *2 (C.D. Cal. Sept. 16, 2013).

Statement of Information therefore qualifies as a non-hearsay statement of an opposing party, allowing the Court to consider the truth of the matters it contains. Fed. R. Evid. 801(d)(2).

Finally, Mentor claims that the 2013 Statement of Information was simply incorrect in describing NuSil's business as the manufacture of silicone products. It points out that NuSil has since filed an amended statement of information, in which it describes NuSil as an "[i]nvestment holding entity." Decl. Thomas Banigan ¶ 6, Ex. A (Dkt. No. 33-1). But the updated statement of information, which NuSil filed nearly a month after Plaintiffs' complaint, only creates a fact dispute that the Court need not resolve. Mentor may be correct that NuSil has never manufactured silicone, but Plaintiffs' evidence suggests otherwise. That issue of fact precludes the Court from holding that Mentor has established fraudulent joinder by clear and convincing evidence. Thus, NuSil is a proper defendant, and the Court lacks diversity jurisdiction.

**B. Federal Question Jurisdiction**

Mentor alternatively claims that the Court has federal question jurisdiction over this dispute because it arises under federal law. According to Mentor, the breast implants at issue in this case are so federally regulated that Plaintiffs' Complaint necessarily raises substantial questions of federal law.

As noted above, courts typically have federal question jurisdiction when a federal law creates the plaintiff's cause of action. *Merrell Dow*, 478 U.S. at 808. Such cases "account[] for the vast bulk of suits that arise under federal law." *Gunn*, 568 U.S. at 257. If the plaintiff does not facially present a federal claim, a court must determine whether the case falls within "a special and small category of cases in which arising under jurisdiction still lies." *Id.* at 258 (quotations omitted). Federal jurisdiction over a state-law claim exists when the plaintiff's claims present federal issues that are "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance

approved by Congress." *Id*.

Plaintiffs' Complaint in this case asserts three state-law tort causes of action. Because federal law does not create Plaintiffs' causes of action, the Court must remand the case unless Mentor establishes all four elements of the substantial question test outlined in *Gunn*.

### 1. Necessarily Raised

To establish federal question jurisdiction, Mentor first must show that Plaintiffs' state-law claims necessarily depend on a question of federal law. *Merrell Dow*, 478 U.S. at 806 n.2. "When a claim can be supported by alternative and independent theories—one of which is a state law theory and one of which is a federal law theory—federal-question jurisdiction does not attach because federal law is not a necessary element of the claim." *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 346 (9th Cir. 1996) (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800 (1988)). A plaintiff therefore avoids removal if a state-law theory of relief exists for each of its causes of action. *Duncan v. Stuetzle*, 76 F.3d 1480, 1486 (9th Cir. 1996) ("[I]f a single state-law based theory of relief can be offered for each of the three causes of action in the complaint, then the exercise of removal jurisdiction was improper."). An express preemption defense alone cannot establish that a plaintiff's claims necessarily raise a federal issue. *David v. Medtronic, Inc.*, No. 13-cv-04441 DMG (CW), 2013 WL 12132038, at *3 (C.D. Cal. Aug. 6, 2013).

In *David*, the plaintiffs asserted various California common law torts against the defendants based on their alleged manufacture, distribution, and marketing of a medical device. *Id.* at *1. The defendants removed the case to federal court and asserted federal question jurisdiction. *Id.* In support of removal, the defendants argued that the plaintiffs' claims necessarily depended on federal law because of the Federal Food, Drug, and Cosmetic Act's ("FDCA") express preemption provision. *Id.* at *3. The FDCA preempts any state-law claim that imposes a requirement "different from, or in addition to, any requirement applicable . . . to the device" that "relates to

8.

the safety or effectiveness of the device . . . ." *Id.* (citing 21 U.S.C. § 360k(a)). Because the plaintiffs would have to establish a violation of federal requirements to avoid preemption, the defendants argued, their claims necessarily raised federal issues. *Id.* But the court rejected the defendants' argument. *Id.* It reasoned that the plaintiffs' state-law tort claims could be resolved by reference to state law alone. *Id.* at *4. That the plaintiffs might ultimately have to establish "a parallel federal requirement to avoid preemption . . . d[id] not . . . transform the state law claims into federal questions." *Id.* Thus, the court remanded the case to state court. *Id.*

Here, Mentor makes the same argument the court rejected in *David*. It claims that the FDCA's express preemption provision makes "a violation of federal law . . . an *essential element*" of Plaintiffs' claims. Opp'n at p. 20. But, as the court explained in *David*, the parallel federal requirements Plaintiffs may need to satisfy do not turn their state-law causes of action into federal claims. Those claims will still be decided under state common law principles. To hold otherwise would subvert the longstanding rule that a preemption defense does not create federal question jurisdiction. *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 14 (1983) (explaining that it is "settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption"). Indeed, the federal preemption issues Mentor identifies will only arise once Defendants assert a preemption defense. *See Violette v. Smith & Nephew Dyonics, Inc.*, 62 F.3d 8, 10–12 (1st Cir. 1995) (holding that the defendant waived its preemption defense under 21 U.S.C. § 360k(a) by failing to raise it). The Court does not consider potential defenses in assessing federal question jurisdiction. Thus, Mentor has not established that Plaintiffs' well-pleaded Complaint necessarily raises a federal issue.

Mentor's citations to out-of-circuit district court decisions do not alter the Court's conclusion. Mentor identifies three decisions in which courts permitted removal in cases similar to this one: *Burrell v. Bayer Corp.*, No. 1:17-cv-0032-MOC-

9.

DSC, 2017 WL 1032504, at *4 (W.D.N.C. Mar. 17, 2017); *H.R. ex rel. Reuter v. Medtronic, Inc.*, 996 F. Supp. 2d 671, 681 (S.D. Ohio 2014); and *Jenkins v. Medtronic, Inc.*, 984 F. Supp. 2d 873, 882 (W.D. Tenn. 2013). Opp'n at p. 19. Only one of those cases, *Burrell*, analyzed the federal question issue under the principles articulated in *Gunn*. Moreover, a review of those cases' citation references reveals that many courts have declined to follow them. *See*, *e.g.*, *Sangimino v. Bayer Corp.*, No. C 17-01488 WHA, 2017 WL 2500904, at *2–3 (N.D. Cal. June 9, 2017) (declining to follow *Burrell*, *Reuter*, and *Jenkins* to the extent they contradicted the court's conclusion that the plaintiffs' product liability claims did not necessarily raise federal issues). This Court likewise will not follow *Burrell*, *Reuter*, or *Jenkins* to the extent they suggest that Plaintiff's Complaint necessarily raises a federal issue.

### 2. Substantial

Even if Mentor could establish that the Complaint necessarily raises federal issues, it cannot show that those issues are substantial enough to justify federal jurisdiction. Substantiality in the removal context assesses "the importance of the issue to the federal system as a whole," not just the importance of the issue to the parties. *Gunn*, 568 U.S. at 260. A removing party therefore must establish that the federal issues in a case reach beyond the parties and the facts of the case. *Compare Grable*, 545 U.S. at 315 (holding that a complaint raised a substantial federal issue where "the meaning of [a] federal statute [was] actually in dispute" and that meaning was important to the Internal Revenue Service) *with Gunn*, 568 U.S. at 263, 64 (holding that the federal patent issues necessarily raised by the plaintiff's malpractice claim were not substantial because "the result would be limited to the parties and patents that had been before the state court").

This case is a simple product liability dispute. While the federal issues that may arise in this case certainly will be important to the parties, they are not important to the federal system as a whole. In asserting that the federal issues here are important to the federal system generally, Mentor argues that "Plaintiffs are undermining the

carefully-crafted regulatory scheme established by Congress." Opp'n at p. 21. But this is simply a preemption argument, and federal preemption does not confer federal question jurisdiction. *Franchise Tax Bd.*, 463 U.S. at 14. Mentor points to no federal issue raised in the Complaint itself that will have an impact beyond the parties and the facts of this case. Thus, Mentor has failed to establish that Plaintiffs' claims raise substantial federal issues.

Because Mentor has failed to establish at least two required elements of the substantial question test, the Court lacks federal question jurisdiction. And, as explained above, the Court does not have diversity jurisdiction, either. Accordingly, Mentor has not persuaded the Court that it may exercise subject matter jurisdiction over this case.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion to remand. The matter is remanded to Los Angeles County Superior Court.

**IT IS SO ORDERED.**

Dated: September 07, 2018

HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE